ALLEN McNICHOLS, Plaintiff-Appellant, v. HAROLD J. JERSILD, Defendant-Appellee (Rock Island Franciscan Hospital, Defendant).

Third District   No. 3—87—0673

Opinion filed May 6, 1988.

Louis E. Olivero & Associates, of Peru (David Olivero, of counsel), for appellant.

Robert V. P. Waterman, Jr., of Lane & Waterman, of Davenport, Iowa, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The plaintiff, Allen McNichols, brought an action to recover damages allegedly occasioned by the medical negligence of the defendants, Dr. Jersild and the Rock Island Franciscan Hospital, in treating him for fractures of both the radius and ulna in the right forearm. Both defendants filed motions for summary judgment which were granted by the trial court. The plaintiff appeals. We affirm.

The facts of the case are as follows. On July 5, 1982, the plaintiff was taken to the hospital after a motorcycle accident in which he sustained comminuted fractures of the radius and ulna in the right forearm. The following day he underwent surgery by Dr. Jersild for internal fixation of the fractured bones. Internal fixation involves the use of plates and screws to hold the fracture rigidly and eliminate, as much as possible, movement of the fractured bones. Dr. Jersild used a five-hole, semitubular metal plate to secure the plaintiff's radius bone. After surgery, a cast was also applied. On August 16, 1982, Dr. Jersild removed the cast, examined the plaintiff's right forearm and noted that the radial fracture had angulated, because the internal fixation was not holding. A new cast was applied and it was decided that the arm would be reexamined in a month. X rays taken the next month showed callus forming on the radius, so the doctor decided to allow the injury more time to heal. A shorter cast was applied. On October 13, 1982, the short arm cast was removed and more X rays were taken, which revealed good callus across both fracture sites. The angulation of the radius was still apparent and prevented the plaintiff from being able to fully pronate and supinate the forearm. On November 16, 1982, Dr. Jersild examined the plaintiff and noted that he was "doing pretty well with the arm." The plaintiff told the doctor that he had the possibility of getting a vending machine job, and the doctor told him to use the arm as tolerated but to be careful about falling down on it. The plaintiff was to return in several months for a follow-up exam, but never returned.

The plaintiff began seeing Dr. Stachniw on February 28, 1983. Dr.

Stachniw found that the plaintiff had a deformity of his right forearm, that the plate secured by Dr. Jersild had bent at the fracture site, and that there was a nonunion of the radial fracture. Dr. Stachniw testified that only two things could cause a plate to bend—trauma or a muscle pull. He operated to correct the deformity, and in so doing, removed the plate used by Dr. Jersild and replaced it with a longer, thicker, six-hole plate. After Dr. Stachniw's operation on the plaintiff, the radius still failed to unite. A third operation was performed November 15, 1983. X rays taken August 9, 1984, showed that the fracture of the radius had healed and that the plaintiff could perform most of his daily living activities without a problem. He still had limitations supinating and pronating.

The plaintiff filed a complaint against the two defendants on July 5, 1984. On December 6, 1985, the court entered an order directing the plaintiff to disclose all experts no later than 60 days from that date. Two days after the 60-day period expired, the plaintiff disclosed that Dr. Stachniw would be his expert against both Dr. Jersild and the hospital. Dr. Stachniw was deposed on May 28, 1987. In his deposition, he testified that he was not in a position to give an opinion as to whether Dr. Jersild's treatment of the plaintiff's injury fell below the requisite standard of care. He also stated that the plaintiff's attorney had not asked him to render an opinion against the hospital, and that he had no opinion concerning whether or not the hospital breached a duty owed to the plaintiff.

Thirty days after Dr. Stachniw's deposition, Dr. Jersild motioned the court for summary judgment and filed his own affidavit in support. The plaintiff filed a response to the motion and attached an excerpt from Campbell's Operative Orthopedics, a medical treatise, an affidavit of the plaintiff's attorney, and certain correspondence. The response claimed that the treatise supported the allegations of negligence made against Dr. Jersild—that he placed at least one of the screws improperly and that he should have used a different size and type plate. The affidavit stated that the plaintiff's attorney had been surprised by the deposition testimony of Dr. Stachniw and that he believed he could obtain an expert to prove the plaintiff's case. At a later date, the plaintiff filed with the court a letter from an undisclosed, alleged medical consultant which indicated that Dr. Jersild placed one of the screws improperly and possibly chose the wrong size and type plate.

On August 21, 1987, the court granted the motion for summary judgment. The plaintiff filed a motion for reconsideration which the court denied on September 22, 1987. At that time, the trial court also

entered an order granting the hospital's motion for summary judgment. The plaintiff appeals from those orders.

■ Initially, we will consider the hospital's motion taken with the case to dismiss the appeal as to it. The hospital argues that because the plaintiff's brief failed to address or claim as error the order of August 21, 1982, as it applies to the hospital, the plaintiff waived any issues as to the hospital. Thus, the appeal should be dismissed. We agree that by failing to raise any issues as to the hospital, the plaintiff has waived them. (107 Ill. 2d R. 341(e)(7); *Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89.) However, rather than dismiss the appeal, we affirm the judgment granting the hospital's motion for summary judgment. See *Shockley*, 74 Ill. App. 3d 89.

■ The plaintiff first contends on appeal that Dr. Jersild's motion for summary judgment was improperly granted because he was not given every reasonable opportunity to establish his case after he demonstrated that he might be able to obtain a new expert witness. The plaintiff maintains that he demonstrated his ability to obtain an expert through the medical treatise and the "medical consultant's report." We disagree.

The medical treatise described the types of plates and screws that can be used for internal fixation of fractures and described the surgical technique for applying the devices. Though the treatise author preferred a dynamic compression plate over the type of plate chosen by Dr. Jersild, he stated that each device has advantages and disadvantages and that the choice of plate is determined chiefly by the training and experience of the surgeon. The author also stated that a plate that is longer than necessary is better than one that is too short, because screws inserted too closely to the fracture may split the bone as the screw is tightened and pressure is applied. The treatise was interesting, but it was not, standing alone, sufficient to support the plaintiff's allegations that Dr. Jersild chose the wrong type or size plate or inserted the screws improperly.

As to the letter from the alleged medical consultant, we find the plaintiff's reliance on it to be unfounded. The report is unsworn to and uncertified. It consists of a statement from an undisclosed person who suggests that Dr. Jersild may have chosen the wrong type and length of plate and may have improperly placed one of the screws. This statement is incompetent and unworthy of consideration. In considering a motion for summary judgment, the trial judge can only consider the pleadings, depositions, and admissions on file, together with the affidavits, if any. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) The so-called medical consultant's report from an unnamed and uni-

dentified person does not fall within any of these categories. See *Cincinnati Insurance Co. v. Argubright* (1986), 151 Ill. App. 3d 324, 328-29.

■ Additionally, the plaintiff conceded at oral argument that at the hearing on the motion for summary judgment, he did not ask the court for a continuance on the ground that he needed additional time to obtain an expert or on any other ground. Rather, in response to questions posed by this court, he stated that at the time of the hearing on the motion for summary judgment he was prepared to stand on the record and let the trial judge decide the summary judgment motion. He further stated that he felt he would be able to have an expert witness at trial but did not feel such was necessary to defeat the motion for summary judgment.

Tucked away in the body of the plaintiff's memorandum in opposition to the summary judgment motion are the representations noted above that the treating doctor's change of heart has taken plaintiff by surprise and that plaintiff should be afforded the opportunity to secure the services of another medical expert and that plaintiff would be able to do that. It is noteworthy, however, that the prayer for relief in that memorandum asks only that the defendant's motion be denied. It does not indicate that the motion is unripe for decision. It does not ask for a continuance. There is no duty imposed on a trial court to continue a case when no request for a continuance has been made. *Yaw v. Beeghly* (1982), 109 Ill. App. 3d 627, 632.

■ Further, the plaintiff's response to Dr. Jersild's motion for summary judgment and the materials attached thereto could not be considered a sufficient request for continuance, since the plaintiff failed to furnish an adequate affidavit as required by Supreme Court Rule 231(a) (107 Ill. 2d R. 231(a)). (*Mikarovski v. Wesson* (1986), 142 Ill. App. 3d 193.) Rule 231(a) requires a continuance affidavit to show:

> "(1) [T]hat due diligence has been used to obtain the evidence or the want of time to obtain it; (2) of what particular fact or facts the evidence consists; (3) if the evidence consists of the testimony of a witness, his place of residence, or if his place of residence is not known, that due diligence has been used to ascertain it; and (4) that if further time is given the evidence can be procured." (107 Ill. 2d R. 231(a).)

The verified memorandum of the plaintiff's attorney alleged only element four.

■ ▌ Finally, we consider the related question of whether the plaintiff should have been allowed to proceed to trial without the benefit of an expert witness. The standards for imposition of liability in

medical malpractice cases are outlined in *Scardina v. Colletti* (1965), 63 Ill. App. 2d 481, 488:

"In a malpractice action a physician will be held responsible for injuries resulting from his want of reasonable care, skill and diligence in his practice. The plaintiff must prove by affirmative evidence that the defendant was unskillful or negligent and that his want of skill or care caused injury to the plaintiff. It is not enough to prove that he made a mistake or that his treatment harmed the plaintiff; proof of a bad result or mishap is no evidence of lack of skill or negligence.

Generally, it is necessary for a plaintiff to show by expert testimony not only that the injury occurred, but that such an event does not ordinarily occur in the normal course of events without negligence. [Citations.] The so-called 'common knowledge' and 'gross negligence' exceptions to the requirement of expert testimony are applicable if the negligence of the physician is so grossly apparent or the treatment is such a common occurrence that a layman would have no difficulty in appraising it."

It is apparent that the charges in the plaintiff's complaint concerning Dr. Jersild's choice of plate as well as his placement of the screws required more than common knowledge and experience to understand, and thus were not within the common comprehension of laymen. Since the plaintiff failed to obtain an expert medical opinion to sustain the charges or otherwise demonstrate them or seek a continuance in order to obtain such opinion or other evidence in the future, the trial court correctly entered summary judgment in favor of Dr. Jersild. Accordingly, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

BARRY and WOMBACHER, JJ., concur.