VITO GALLINA, Plaintiff-Appellant, v. MICHAEL WATSON *et al.*, Defendants-Appellees.

Fourth District   No. 4—04—0244

Argued November 9, 2004.—Opinion filed December 20, 2004.—Rehearing denied January 28, 2005.

Rick Verticchio (argued), of Verticchio & Verticchio, of Gillespie, for appellant.

Karen L. Kendall (argued), Adrian E. Harless, and Michael T. Kokal, all of Heyl, Royster, Voelker & Allen, of Springfield, for appellee Michael Watson.

Edward J. Cunningham (argued), of Brown, Hay & Stephens, L.L.P., of Springfield, for appellee Memorial Medical Center.

JUSTICE KNECHT delivered the opinion of the court:

In January 2004, a jury found in favor of defendants, Dr. Michael Watson and Memorial Medical Center (Memorial), in a medical malpractice action filed by plaintiff, Vito Gallina. Gallina appeals, arguing the trial court erred by (1) granting Dr. Michael Watson and Memorial's motion *in limine* regarding the testimony of a defense expert witness and (2) refusing to allow plaintiff's exhibit No. 9 to be taken into the jury room during deliberations. We reverse and remand.

## I. BACKGROUND

On March 9, 1997, Vito Gallina was injured in a head-on vehicle collision at over 85 miles per hour. Gallina fractured his jaw, left femur, pelvis, hand, and both ankles. Gallina also ruptured his spleen and suffered a loss of blood.

Gallina was taken to Memorial in Springfield for treatment. Dr. Michael Watson was on call the night of the accident and responded at Memorial. Multiple specialists, including Dr. Watson, treated Gallina after the accident. Dr. Watson treated the fracture of Gallina's talus bone by immobilizing the fracture with a splint. Dr. Watson testified he did not operate on Gallina's right ankle because it was acceptable not to do so and another surgery could have threatened Gallina's life due to the multiple surgeries already performed that night.

In March 1999, Gallina filed a complaint against Dr. Watson and Memorial. In January 2001, Gallina filed a three-count second-amended complaint against Dr. Watson and Memorial. Count I alleged Dr. Watson was negligent in his treatment of Gallina. Count II alleged Memorial was responsible for Dr. Watson's negligence based on agency. Count III alleged Memorial was responsible for Dr. Watson's negligence based on apparent agency.

In September 2003, Memorial filed a motion for summary judgment on count II of Gallina's second-amended complaint. The record does not reflect the trial court ever ruled on this motion. Memorial did not file a motion for summary judgment on count III of Gallina's second-amended complaint.

In January 2004, Dr. Watson filed a motion *in limine* to exclude testimony relating to Dr. Joseph Whalen's personal preferences for treating different types of fractures. Later that month, Memorial joined in Dr. Watson's motion *in limine*. After hearing arguments on the motion *in limine*, the trial court allowed the motion. As a result, the following testimony was deleted from the videotaped evidence deposition of Dr. Whalen:

"[MR. VERTICCHIO (plaintiff's counsel):] Would you be of the opinion that this type of controversial decision should have been discussed with the patient being allowed to make the decision as to what treatment he would opt for?

MR. KOKAL [(defense counsel)]: We still have our objection beyond the scope.

[MR. VERTICCHIO:] I understand you believe that. I don't necessarily agree with it.

[DR. WHALEN:] Well, I can't say what Dr. Watson did or said. I would present to the patient that it's this type of fracture. If you follow the instructions well, you do what I say, we won't need to do surgery. Surgery is an option. It carries its own risks such as further interfering with the blood supply. The healing potential is not really too much different between nonoperative and operative treatment with [t]ype I fractures. Like I said, it's the experience of the surgeon, and it's a controversial area. I tend to be one that fixes them.

[MR. VERTICCHIO:] Thank you, Doctor. No further questions. Fix them—excuse me. Fix them by open reduction?

[DR. WHALEN:] All Type IIs, Type Is I may treat nonoperatively."

According to the testimony of Dr. Watson, he agreed with his resident's assessment in the preoperative diagnosis section of the operative report that Gallina had a type II fracture.

During the trial, Gallina introduced as evidence the written opinion disclosures of another of defendants' expert witnesses, Dr. Vilray Blair. Gallina asked the trial court to allow these disclosures, plaintiff's exhibit No. 9, to be taken by the jury into the jury room during its deliberations. The court denied this request.

The jury found against Gallina and for Dr. Watson and Memorial. Gallina appeals.

## II. ANALYSIS

Gallina argues the trial court erred by (1) allowing Dr. Watson and Memorial's motion *in limine* deleting the portion of Dr. Whalen's evidence deposition regarding his personal treatment preferences and (2) denying Gallina's request to send plaintiff's exhibit No. 9 into the jury room during the jury's deliberations.

Memorial argues if we reverse and remand this case to the trial court, we should determine whether Dr. Watson was an ostensible agent of Memorial.

### A. Motion *in Limine*

The first question before this court is whether the trial court erred in allowing Dr. Watson and Memorial's motion *in limine*. Gallina argues the exclusion of the portion of Dr. Whalen's evidence deposition regarding the doctor's personal treatment preferences denied Gallina the right to challenge Dr. Whalen's credibility concerning his opinions expressed in favor of Dr. Watson.

■ "A trial judge has discretion in granting a motion *in limine* and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused." *Swick v. Liautaud*, 169 Ill. 2d 504, 521, 662 N.E.2d 1238, 1246 (1996).

Defendants argue the trial court did not abuse its discretion in granting defendants' motion *in limine* because evidence of a physician's personal preference is irrelevant. They also argue the excluded testimony does not challenge the credibility of Dr. Whalen's opinion, *i.e.*, that Dr. Watson did not violate the standard of care in his treatment of plaintiff.

### 1. *Relevance*

Defendants cite the Supreme Court of Illinois's decision in *Walski*

*v. Tiesenga*, 72 Ill. 2d 249, 381 N.E.2d 279 (1978), to support their argument regarding the relevance of a physician's personal preferences. Defendants rely on the following language from *Walski*:

"It is insufficient for [the] plaintiff to establish a *prima facie* case merely to present testimony of another physician that he would have acted differently from the defendant, since medicine is not an exact science. It is rather a profession which involves the exercise of individual judgment within the framework of established procedures. Differences in opinion are consistent with the exercise of due care." *Walski*, 72 Ill. 2d at 261, 381 N.E.2d at 285.

While we agree with the supreme court, *Walski* is distinguishable from this case.

In *Walski*, the plaintiff failed to present evidence showing the standard of care to which the defendants were bound to adhere. According to the supreme court:

"Plaintiff's expert *** testified only concerning his own personal preference for isolating the laryngeal nerve under the facts presented to him in the hypothetical question. He at no time testified that there was a generally accepted medical standard of care or skill which required the identification of the laryngeal nerve under the circumstances." *Walski*, 72 Ill. 2d at 259, 381 N.E.2d at 284.

In the instant case, Gallina was not attempting to establish his *prima facie* case with the testimony of defendants' expert, Dr. Whalen. Plaintiff Gallina's own expert witness established plaintiff's *prima facie* case.

Defendants also cite *Stevenson v. Nauton*, 71 Ill. App. 3d 831, 390 N.E.2d 53 (1979), and *Mazzone v. Holmes*, 197 Ill. App. 3d 886, 557 N.E.2d 186 (1990). Defendants point to the following language from *Stevenson* in support of their argument:

"The expert's statements as to what he would have done in the situation encountered by Dr. Nauton are irrelevant since the issue before the trial court was whether the defendant acted contrary to accepted or customary medical standards at that time and place." *Stevenson*, 71 Ill. App. 3d at 835, 390 N.E.2d at 56.

This statement, when read alone, would appear to support defendants' position. However, when the statement is read in the context of the entire decision, it does not.

In *Stevenson*, the plaintiff was appealing from a trial court's order granting summary judgment for defendant because the plaintiff failed to "make out a prima facie case as to the acceptable standard of care against which the defendant physician was to be measured." *Stevenson*, 71 Ill. App. 3d at 833, 390 N.E.2d at 55. Plaintiff's expert testified as to what he might have done if he had been consulted by the plaintiff under the same circumstances presented to the defendant. However,

the plaintiff's expert also testified "he could not form a definite opinion as to whether [the defendant's] treatment of the plaintiff was below acceptable medical standards." *Stevenson*, 71 Ill. App. 3d at 833, 390 N.E.2d at 55. Taken in context, we find the appellate court was only saying the plaintiff's expert's statements about what he would have done were not relevant in establishing plaintiff's *prima facie* case.

As we stated above, in the instant case, plaintiff was not attempting to use Dr. Whalen's testimony to establish his *prima facie* case. Plaintiff used his own expert witness to establish his *prima facie* case. As a result, the instant case is distinguishable from *Stevenson*.

In *Mazzone*, the First District Appellate Court stated as follows:

> "On the issue of whether the defendant deviated from the standard of care, an expert's statements as to what he would have done are not relevant because differences in opinion are consistent with conformity to the applicable standard." *Mazzone*, 197 Ill. App. 3d at 898, 557 N.E.2d at 193.

*Mazzone* appears to say an expert's statements as to what he or she would have done are never relevant. In reading this conclusion, we conclude the *Mazzone* court unjustifiably stretched the holdings in both *Walski* and *Stevenson*, on which the *Mazzone* court solely relied and which we have already distinguished from the case at bar.

In arguing the trial court erred in granting defendants' motion *in limine*, plaintiff Gallina relies on language from this court's decision in *Rush v. Hamdy*, 255 Ill. App. 3d 352, 627 N.E.2d 1119 (1993). In *Rush*, the plaintiffs argued the trial court erred in not allowing them to ask the defendants' expert witness whether he would have personally used a "Savary" dilator in treating the plaintiff instead of an achalasia balloon. *Rush*, 255 Ill. App. 3d at 362, 627 N.E.2d at 1125. Defendants' expert testified the use of an achalasia balloon was within the acceptable standard of care. *Rush*, 255 Ill. App. 3d at 362, 627 N.E.2d at 1125-26. However, at his deposition, defendants' expert testified if plaintiff had been his patient, he would have treated her with a "Savary" dilator. *Rush*, 255 Ill. App. 3d at 362, 627 N.E.2d at 1126. The plaintiffs in *Rush* made the following argument:

> "[T]here is a difference in the persuasive value of an expert witness who testifies a certain procedure is within the standard of care and is the procedure which the expert himself would have used under the same circumstances and an expert who testifies a certain procedure is within the standard of care, but that he would not have utilized that procedure under the same circumstances." *Rush*, 255 Ill. App. 3d at 362, 627 N.E.2d at 1126.

This court agreed but found the trial court did not abuse its discretion

in not allowing this line of inquiry because the trial court had allowed the plaintiffs to elicit testimony from the defendants' expert "that he had never used an achalasia balloon to dilate a Schatzki's ring, and in all of his years of practice [the defendant doctor's] treatment of [the plaintiff] was the only case he knew of in which an achalasia balloon had been used to dilate a Schatzki's ring." (Emphasis omitted.) *Rush*, 255 Ill. App. 3d at 363, 627 N.E.2d at 1126. According to this court, "[t]his testimony sufficiently tested the credibility of [the defendants' expert's] opinion that the use of an achalasia dilator was within the acceptable standard of care to the jury." *Rush*, 255 Ill. App. 3d at 363, 627 N.E.2d at 1126.

■ While we agree with defendants a plaintiff cannot establish a *prima facie* case of medical negligence based solely on the testimony of another physician that he or she would have done things differently, we disagree with defendants' argument that an expert medical witness's personal preferences are always irrelevant. In this case, the excluded portion of Dr. Whalen's testimony is relevant because it affects the persuasive value of Dr. Whalen's opinions as discussed below.

## 2. *Credibility*

Defendants also argue Dr. Whalen's excluded testimony that he always treats type II fractures by open reduction is not inconsistent with his testimony opining Dr. Watson did not violate the standard of care by treating plaintiff's fracture without surgery because Dr. Whalen identified plaintiff's fracture as a type I fracture. However, this ignores the fact Dr. Watson testified at trial he did not disagree with his resident's assessment in the preoperative diagnosis section of the operative report that Gallina had a type II fracture of the talus. Further, Dr. Watson also admitted he was of the opinion Gallina had a type II talar fracture when he saw an X ray of plaintiff's ankle on the night of the accident.

■ If no evidence suggested Dr. Watson believed Gallina had a type II fracture when he treated Gallina on the night of the accident, defendants would be correct in asserting Dr. Whalen's testimony he always treats type II fractures by open reduction would be irrelevant. However, Dr. Watson testified he diagnosed Gallina as having a type II fracture on the night of the accident. As a result, Dr. Whalen's testimony he always performs open reductions on type II fractures is relevant because Dr. Watson testified he believed he was dealing with a type II fracture when he chose not to operate on plaintiff.

While Dr. Whalen's excluded testimony far from proves Dr. Watson breached the standard of care by not performing an open reduction on plaintiff, Dr. Whalen's excluded testimony goes to the credibility and

persuasive value of his opinion Dr. Watson's actions were within the standard of care.

We find the trial court abused its discretion in excluding this testimony from the jury as it is relevant and affects the credibility and persuasive value of Dr. Whalen's opinion Dr. Watson acted within the standard of care.

## B. Plaintiff's Exhibit No. 9

■ The second question before this court is whether the trial court erred in denying plaintiff Gallina's request for the jury to take plaintiff's exhibit No. 9, Dr. Blair's written opinion disclosures, into the jury room during its deliberations.

According to section 2—1107(d) of the Code of Civil Procedure (Code), "[p]apers read or received in evidence, other than depositions, may be taken by the jury to the jury room for use during the jury's deliberations." 735 ILCS 5/2—1107(d) (West 2002). "The decision whether to send exhibits to the jury room is within the trial court's sound discretion, and a reviewing court will not disturb that decision absent an abuse of discretion that prejudices a party." *Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165, 176, 683 N.E.2d 985, 993 (1997).

We find the trial court abused its discretion in not allowing plaintiff's exhibit No. 9 to go to the jury room. None of the parties in their respective briefs identified the location in the record of the parties' arguments on whether plaintiff's exhibit No. 9 should go to the jury room. Memorial states in its brief the court did not allow the exhibit to go to the jury room because it would place more emphasis on that exhibit than the other pieces of evidence. Memorial also states in its brief the exhibit contained many irrelevant opinions.

We agree trial courts have a wide range of discretion in deciding what will be sent to the jury room. However, based on the facts in this case, we find the court abused its discretion in not allowing plaintiff's exhibit No. 9 to go to the jury room. This exhibit would have been of assistance to the jury in assessing Dr. Blair's testimony. We disagree with Memorial when it argues sending plaintiff's exhibit No. 9 to the jury would have overemphasized that piece of evidence; the court sent all of the other exhibits to the jury room. By not sending plaintiff's exhibit No. 9 to the jury room, the court diminished this piece of evidence.

## C. Ostensible Agency

■ Memorial argues if we remand this case to the trial court, we must decide whether Dr. Watson was an ostensible agent of Memorial. Ostensible or apparent agency is the basis for count III of Gallina's

second-amended complaint. From the record, it does not appear Memorial ever filed a motion for summary judgment on count III of Gallina's second-amended complaint. As a result, the trial court never had an opportunity to rule on this issue. We will not rule on this issue until the trial court has had an opportunity to do so. Memorial is free to raise this issue with the court on remand.

## III. CONCLUSION

For the reasons stated, we reverse and remand this case to the trial court.

Reversed and remanded.

COOK, P.J., and MYERSCOUGH, J., concur.