GLENN D. NETTO, Adm'r of Estate of Katherine Netto, Deceased, Plaintiff-Appellant, v. BRUCE F. GOLDENBERG, Defendant-Appellee.

Second District    No. 2—93—0312

Opinion filed September 2, 1994.—Rehearing denied November 1, 1994.

Peter R. Coladarci, of Chicago, for appellant.

Douglas J. Pomatto, of Heyl, Royster, Voelker & Allen, of Rockford, Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, and Patrick J. Kenneally, of Patrick J. Kenneally, Ltd., of Chicago, for appellee.

JUSTICE PECCARELLI delivered the opinion of the court:

The plaintiff, Glenn Netto, M.D., administrator of the estate of Katherine Netto (decedent), sued defendants, Rockford Memorial Hospital (Rockford), Bruce Goldenberg, M.D. (defendant), and Peter Marks, M.D., alleging that defendants' negligence caused decedent's death. Summary judgment was granted in favor of Rockford and Dr. Marks. The jury found in favor of the defendant on February 10, 1992. This appeal of the judgment on the verdict followed.

The plaintiff contends that the trial court erred in (1) denying plaintiff's pretrial motion to strike defendant's affirmative defenses; (2) not allowing a board-certified nephrologist to testify to the standard of care applicable to the defendant; (3) refusing to instruct the jury that physicians are liable when their failure to exercise reasonable care is a substantial factor in bringing about the harm allegedly suffered; (4) allowing testimony pertaining to treatment by physicians other than the defendant; (5) allowing impeachment of plaintiff's witnesses with allegedly consistent prior statements; and (6) instructing the jury that the defendant was not allowed to interview the plaintiff's treating physicians or nurses. We reverse and remand for a new trial.

The plaintiff's suit arose from the death of the decedent on May 5, 1986. Decedent was a diabetic with a history of chest discomfort and shortness of breath. The decedent was admitted to Rockford on April 29, 1986, complaining of chest pain and died there on May 5, 1986.

Decedent underwent a quadruple coronary bypass on May 1, 1986. Doctor Marks, a cardiac surgeon, performed the surgery. The defendant, also a cardiac surgeon, assisted Dr. Marks. The plaintiff, a physician, did not participate in the decedent's care. Surgery began at approximately seven o'clock in the morning. During a coronary bypass a patient's heart must be stopped; while the heart is stopped,

a heart-lung machine sustains the patient's respiration and circulation. Doctor Marks stopped decedent's heart, placed her on a heart-lung machine, and performed the quadruple coronary bypass. Initial attempts to restart decedent's heart failed. Doctor Marks decided to redo the previously completed bypasses. Following this, in an effort to assist decedent's weakened heart, Dr. Marks inserted an intra-aortic balloon pump into decedent's right femoral artery. Decedent's heart restarted. She was placed on a ventilator, moved to the surgical intensive care unit, and started convalescing.

Over the next $2^1/2$ days decedent's condition improved. Doctor Marks slowly weaned her from the intra-aortic pump. The decedent began to breathe on her own with the assistance of a respirator. Improvement in decedent's condition prompted Dr. Marks to remove the pump on May 3, 1986. This was done at approximately 11:30 in the morning. The decedent tolerated removal well. Her vital signs were stable.

After removing the pump, Dr. Marks travelled to Chicago with his family on May 3, 1986. Prior to leaving, Dr. Marks arranged for the defendant to assume responsibility for decedent's care in Dr. Marks' absence. Doctor Marks informed the defendant that the pump had been removed and that the decedent was in stable condition. Doctor Marks also reminded the defendant that the Marks family would be spending the rest of the day in Chicago. Doctor Marks left Rockford at approximately one o'clock that afternoon.

Decedent's condition began to deteriorate at approximately 1:40 p.m. on May 3, 1986. A retroperitoneal bleed (a hemorrhage into the space between the abdomen wall and the thin layer of tissue lining the inside of the abdomen) began in the area of the right femoral artery that had accommodated the intra-aortic pump. Decedent's respiration and pulse suddenly increased. Her blood pressure dropped. She became pale. Nurse Susan Stromquist immediately contacted the defendant by pager. The defendant telephoned the hospital at 1:46 p.m. For the next 30 minutes the defendant directed treatment by giving Nurse Stromquist orders by telephone. The defendant did not arrive at the hospital until approximately 5 p.m.

On May 5, 1986, the decedent was seen by a number of specialists. Doctor John Maynard, a nephrologist, was one of these specialists. The decedent died at 11:30 p.m. on May 5, 1986.

The defendant argues that this court is without jurisdiction to hear the plaintiff's appeal. We address this contention first because proper jurisdiction may not be waived and is an absolute prerequisite to appellate review. Essentially, the defendant contends that this court lacks jurisdiction because plaintiff's notice of appeal cites the

trial court's order denying plaintiff's post-trial motion, rather than the order entering the judgment itself. We disagree.

■ In jury cases, an appeal from an order denying a post-trial motion is actually an appeal from the underlying judgment. (See Official Reports Advance Sheet No. 26 (December 22, 1993), R. 303(a)(1), eff. February 1, 1994.) An appeal is limited to the issues raised in the post-trial motion. Therefore, a post-trial motion merely serves as a tool to preserve errors for appellate review. It is unimportant whether the notice of appeal cites to the order disposing of the post-trial motion or the order entering the judgment. For jurisdictional purposes, reference to either order will do. We have jurisdiction because a timely notice of appeal was filed.

The plaintiff first contends that the trial court committed error when it denied plaintiff's pretrial motion to strike defendant's affirmative defenses of contributory negligence. The affirmative defenses claimed that various members of decedent's family were contributorily negligent in failing to (1) seek, at various critical junctures, second medical opinions regarding decedent's care; and (2) ask for a change of physician. Evidence pertinent to these affirmative defenses was presented throughout the trial. While discussing jury instructions, the trial court granted plaintiff's motion for a directed verdict on the affirmative defenses. The court found that as a matter of law neither the plaintiff nor other members of the decedent's family were under a duty either to seek other medical opinions or ask for a change of physician. Following the directed verdict, the plaintiff did not move to strike the irrelevant testimony or have a curative instruction read to the jury.

A motion to strike is required to preserve errors in the admission of evidence. If the objectionable nature of evidence is not apparent until after it is admitted, the opponent should move to strike the offending evidence. (*People v. Koch* (1993), 248 Ill. App. 3d 584, 593, citing *People v. Fritz* (1981), 84 Ill. 2d 72.) More importantly, a party opposing evidence waives any objection unless a motion to strike is made as soon the objectionable nature of the evidence becomes apparent. *Koch*, 248 Ill. App. 3d at 593, citing *Levin v. Welsh Brothers Motor Service, Inc.* (1987), 164 Ill. App. 3d 640, 659.

■ The plaintiff has waived his objection to the testimony pertinent to the affirmative defenses. It became apparent that testimony concerning possible contributory negligence was irrelevant the moment the trial court granted plaintiff's motion for a directed verdict. Immediately following the court's ruling, the plaintiff should have moved to strike the previously admitted testimony. Having failed to do so, the plaintiff waived the alleged error and cannot now complain.

The plaintiff argues that moving to strike the evidence at the close of the case unfairly draws the jury's attention to the offending testimony. Further, the plaintiff asserts that a court instruction to disregard the irrelevant testimony would place him "on the horns of a dilemma not made by his doing." A motion to strike accompanied by an instruction to disregard the stricken testimony might have highlighted the irrelevant material. However, unless a party affirmatively demonstrates that a jury has considered stricken evidence in reaching its verdict, prompt curative action by a trial court is sufficient to cure any prior error in the admission of evidence. (See *People v. Jackson* (1981), 84 Ill. 2d 350, 359.) The plaintiff made a tactical decision not to draw attention to the testimony relating to the affirmative defenses. That was his prerogative. As a result, he may not now assert as error a question waived by virtue of his choice of trial tactics.

The plaintiff also argues that the trial court erred in not allowing a board-certified nephrologist to testify to the standard of care applicable to the defendant, a cardiac surgeon. A physician wishing to testify to the standard of care applicable to another physician must first qualify as an expert on that standard of care. A proponent of an expert witness must establish that the physician (1) is a licensed member of the school of medicine about which the physician will testify and (2) that the physician is familiar with procedures, treatments, and methods observed by other physicians in the defendant physician's community or a similar community. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 243.) Once this foundation is laid, it is within the trial court's discretion to decide whether the witness is qualified to state an opinion on the standard of care. *Purtill*, 111 Ill. 2d at 243.

The foundational requirements are subject to qualification. First, membership in the defendant's specialty or subspecialty is not required; a physician may testify to the standard of care if the "allegations of negligence concern matters within [the physician's] knowledge and observation." (*Jones v. O'Young* (1992), 154 Ill. 2d 39, 43.) Second, physicians may be qualified even if they are not familiar with the defendant physician's community or a similar community; if the procedure, treatment, or method at issue is subject to a minimum uniform standard, physicians are qualified if they are familiar with that standard. *Purtill*, 111 Ill. 2d at 243.

The trial court granted defendant's motion *in limine*, preventing nephrologist John Maynard from testifying to the standard of care owed by the defendant. The plaintiff argues that at the time of trial, before *Jones* was decided, Dr. Maynard was qualified to testify to the standard of care owed by the defendant, because defendant's alleged

180

negligence concerned matters within Dr. Maynard's knowledge and observation. Essentially, the plaintiff contends that *Jones* did not announce new law on qualifying an expert witness, but was a mere restatement of the law in force at the time of trial. We agree.

■ The trial court erred in granting defendant's motion *in limine*. In *Jones*, the Illinois Supreme Court stated:

> "Restricting the qualification of experts to those physicians who are members of the same specialty or subspecialty as the defendant would only upset the balance necessary to an adversarial system without any compensating benefit. Accordingly, *we reaffirm this court's position* in *Purtill* without qualification." (Emphasis added.) (*Jones*, 154 Ill. 2d at 44.)

The implication of this passage is that at the time *Purtill* was decided, and the trial court granted defendant's motion *in limine*, a physician was permitted to testify to the standard of care owed by a defendant physician if the alleged negligence concerned matters within the knowledge and observation of the testifying witness. (See *Gill v. Foster* (1993), 157 Ill. 2d 304, 316.) Doctor Maynard's standard of care testimony should not have been excluded because he was not a cardiac surgeon. The question was whether it was within Dr. Maynard's knowledge and observation whether a physician should come to the bedside to assess a patient's condition, when that patient's vital signs deteriorate. That question was never addressed by the trial court. We hold that this was error.

The third argument raised by the plaintiff addresses the trial court's refusal to give plaintiff's instruction No. 16, a non-Illinois Pattern Jury Instruction (IPI). Instruction No. 16 concerned when a physician is liable for a failure to exercise reasonable care. Plaintiff's instruction No. 16 stated:

> "A physician who undertakes to render care to a patient is liable for the physical harm resulting from his failure to exercise reasonable care if that failure was a substantial factor in bringing about the resultant harm."

Plaintiffs in medical negligence cases do not have to prove that they would have had a better result absent the alleged negligence. (*Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 424.) It must be shown that it is more probably true than not that the defendant's negligence was one of the proximate causes of the plaintiff's injury. (*Von Solbrig*, 60 Ill. 2d at 424; *Pumala v. Sipos* (1987), 163 Ill. App. 3d 1093, 1098.) The plaintiff, however, argues that physicians are liable whenever their "failure to exercise reasonable care is a substantial factor in bringing about harm to [their] patient[s]." We disagree.

The plaintiff's non-IPI instruction set out a reduced standard of

physician liability. The plaintiff based instruction No. 16 on two first district cases, *Chambers v. Rush-Presbyterian-St. Luke's Medical Center* (1987), 155 Ill. App. 3d 458, and *Northern Trust Co. v. Louis A. Weiss Memorial Hospital* (1986), 143 Ill. App. 3d 479. In *Chambers* and *Northern Trust Co.*, the Appellate Court, First District, adopted the Pennsylvania Supreme Court's application of section 323 of the Restatement (Restatement (Second) of Torts § 323 (1965)) for use in medical negligence actions. The first district stated that physicians were liable if (1) plaintiffs showed that physician negligence increased the risk of harm to a person in plaintiffs' position, (2) plaintiffs proved they suffered the harm, and (3) the jury determined that the increased risk was a substantial factor in producing the harm. (*Northern Trust Co.*, 143 Ill. App. 3d at 487, quoting *Hamil v. Bashline* (1978), 481 Pa. 256, 269, 392 A.2d 1280, 1286.) This formulation could only be applied when direct proof of causation was not available. (*Chambers*, 155 Ill. App. 3d at 464.) Essentially, the *Northern Trust Co.* and *Chambers* courts removed the proximate cause element from medical negligence actions.

■ We refuse to adopt plaintiff's reduced standard for physician liability. In reconsidering *Chambers*, the first district stated that, under *Von Solbrig*, a plaintiff must "prove that the doctor's negligence was more probably than not a proximate cause of the decedent's death." (*Hare v. Foster G. McGaw Hospital* (1989), 192 Ill. App. 3d 1031, 1038.) We, like the first district in *Hare*, may not overrule or modify the decisions of the Illinois Supreme Court. (*Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 552.) We hold that plaintiffs in medical negligence actions must prove that their injuries were proximately caused by physician negligence. Physicians are not liable if plaintiffs only prove that negligence was a substantial factor in causing their injuries. In light of the preceding, the trial court did not commit error in refusing to give plaintiff's instruction No. 16.

The plaintiff's fourth contention is that the trial court should not have allowed testimony pertaining to treatment by physicians other than the defendant. This is premised on an agreed order *in limine.* The order read in pertinent part:

> "Neither party, their attorney or [*sic*] witnesses shall state, suggest or imply *** any qualified witness has an opinion that a physician deviated from the applicable standard of care where such deviation was not a proximate cause of the decedent's death."

Defendant's medical expert, Robert Breyer, M.D., testified critically concerning Dr. Marks' treatment decisions. In plaintiff's brief much is made of Dr. Breyer's inability to state affirmatively that Dr. Marks' decisions were the proximate cause of decedent's

death. Because Dr. Breyer could not state that Dr. Marks' decisions were the proximate cause of death, the plaintiff's argument runs, the terms of the agreed order *in limine* prohibited Dr. Breyer from offering his opinion on whether Dr. Marks' decisions were a deviation from the applicable standard of care. We disagree.

An order *in limine* that attempts to prohibit testimony of any deviation from the applicable standard of care, on the basis that the deviation was not a proximate cause of death, is meaningless because a determination of what proximately caused death is a prerequisite to enforcing the order. Proximate cause is a question for the trier of fact. (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 393.) Until the jury reached their verdict, it was not known whether the conduct of any physician was the proximate cause of decedent's death. It was impossible for the trial court to enforce the agreed order *in limine* without knowing the proximate cause of decedent's death. Because it was unenforceable as written, the portion of the order *in limine* relied on by the plaintiff was a nullity.

■ The trial court did not err in allowing the testimony of treatment by physicians other than the defendant. Because the order *in limine* was a nullity, the admission of testimony concerning treatment of the decedent by other physicians was a question of relevancy. Determining the relevancy of evidence is left to the sound discretion of the trial court. (*People v. Boclair* (1989), 129 Ill. 2d 458, 476, *cert. denied* (1992), 503 U.S. 962, 118 L. Ed. 2d 213, 112 S. Ct. 1567.) An evidentiary ruling should only be disturbed if the trial court abused its discretion. (*Boclair*, 129 Ill. 2d at 476.) The trial court's admission of testimony of treatment by physicians other than defendant was justified by the possibility that the act or omission of someone other than the defendant caused decedent's death. (See *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 85.) Admitting such evidence was not an abuse of discretion.

■ The plaintiff's fifth argument is that the trial court allowed the plaintiff's witnesses to be impeached with allegedly consistent prior statements. The plaintiff contends this occurred in exchanges between defense counsel and Nurse Stromquist and plaintiff's expert, Dr. Kenneth Barron. After examining the record, we find that the trial court did not abuse its discretion in allowing Dr. Barron and Nurse Stromquist to be impeached with their prior statements. See *Boclair*, 129 Ill. 2d at 476.

Finally, the plaintiff contends that the trial court erred when it instructed the jury that the defendant was not allowed to interview plaintiff's treating physicians or nurses. Illinois Pattern Jury Instruction Civil 3d No. 2.06 states:

"An attorney has a right to interview a witness for the purpose of learning what testimony the witness will give. The fact that the witness has talked to an attorney and told him what he would testify to does not, by itself, reflect adversely on the truth of the testimony of the witness." (Illinois Pattern Jury Instructions, Civil, No. 2.06 (3d ed. 1989) (hereinafter IPI Civil 3d).)

The plaintiff argues that IPI Civil 3d No. 2.06 should have been given to the jury without modification. Instead, the trial court gave defendant's instruction No. 6, a modified version of IPI Civil 3d No. 2.06. Instruction No. 6 stated:

"An attorney has the right to interview a witness for the purpose of learning what testimony the witness will give. The fact that the witness has talked to the attorney and told him what he would testify to does not, by itself, reflect adversely on the truth of the testimony of the witness. *However, the defendant's attorney cannot interview the plaintiff's treating physicians or nurses.*" (Emphasis added.)

This was done because the physician-patient privilege prohibits *ex parte* contact between defense counsel and plaintiff's treating physician or nurse. (See *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581.) We agree with the plaintiff that the court erred in giving IPI Civil 3d No. 2.06 as modified.

Having the jury informed of the applicable legal principles, issues presented, and facts which must be proven to support a verdict is the right of each party. (*Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 568.) An IPI instruction must be given unless the trial court determines that the IPI instruction does not accurately state the law. 134 Ill. 2d R. 239(a).

*Petrillo* does not support the giving of defendant's modified IPI Civil 3d No. 2.06. While discussing proposed jury instructions, defense counsel opined that IPI Civil 3d No. 2.06 was unfair because it gave the impression that plaintiff's treating physicians and nurses were equally accessible to both sides. This concern is inappropriate to determining whether IPI Civil 3d No. 2.06 correctly states the law. The "single purpose" of IPI Civil 3d No. 2.06 is to ensure that juries do not discount a witness' testimony only because the witness has spoken to an attorney for one of the litigants. (*Testin v. Dreyer Medical Clinic* (1992), 238 Ill. App. 3d 883, 892, quoting *Petrillo*, 148 Ill. App. 3d at 602.) This is demonstrated by the commentary to IPI Civil 3d No. 2.06 that the commentary, while making note of *Petrillo*, does not modify the instruction in situations covered by the *ex parte* communication prohibition. (See IPI Civil 3d No. 2.06.) We hold that IPI Civil 3d No. 2.06 should not be modified in cases governed by *Petrillo*.

■ The modified instruction given by the trial court was misleading. In his brief, the defendant draws a distinction between depositions and interviews. This distinction is not well taken. Certainly, attorneys understand that a deposition is far removed from a free ranging, *ex parte* interview. Attorneys also understand that there is a great difference between not being allowed to interview a potential witness and not being allowed to depose that same witness. The pertinent question, however, is whether that difference would be understood by a jury of laypersons reading the modified IPI Civil 3d No. 2.06. We think not. The modified version of IPI Civil 3d No. 2.06 clearly implies that the plaintiff was allowed to learn, before trial, what testimony his treating physicians and nurses would give, while the defendant was denied this opportunity. This was not the case. (See 134 Ill. 2d Rules 204(a) (compelling appearance of deponent), (c) (depositions of physicians and surgeons).) A jury instruction is proper if it does not mislead. (*Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 646.) In deciding whether an instruction is misleading, it must be viewed in context with all the given instructions. (*Nicholl*, 104 Ill. App. 3d at 646.) Modified IPI Civil 3d No. 2.06 was the only instruction addressing the question of attorney contact with witnesses. No other instruction cured the error presented by the modified instruction. Because of this, we hold that the jury was misinformed of the defendant's ability to communicate with plaintiff's treating physicians and nurses before trial.

When viewed separately, the trial court's errors do not mandate a new trial; when considered jointly, these erroneous rulings require that the plaintiff be given another opportunity to present his case. Reviewing courts are not concerned that parties receive error-free trials. (*A.W. Wendell & Sons, Inc. v. Qazi* (1993), 254 Ill. App. 3d 97, 119.) Our concern is whether the plaintiff received a fair trial, one free of substantial prejudice. A new trial is necessary when the cumulative effect of trial errors so deprives a party of a fair trial that the verdict might have been affected. (See *Salmen v. Kamberos* (1990), 206 Ill. App. 3d 686, 698.) The plaintiff's right to a fair trial has been compromised. Upon reviewing the record, we cannot say that the errors did not affect the verdict. We conclude that the cumulative effect of the trial court's errors deprived the plaintiff of a fair trial and might have affected the verdict. Accordingly, we reverse the circuit court's judgment and remand the cause for a new trial.

Reversed and remanded.

INGLIS, P.J., and BOWMAN, J., concur.