No. 3--09--0109

Filed April 8, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| MARILYN J. HARDY, | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit |
| Plaintiff-Appellant, | ) | Rock Island County, Illinois |
| | ) | |
| v. | ) | No. 08--L--22 |
| | ) | |
| MARTHA CORDERO and MEDICAL | ) | |
| ARTS ASSOCIATES, LTD., a | ) | |
| Corporation, | ) | |
| | ) | Honorable Alan G. Blackwood, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the opinion of the court:

Plaintiff, Marilyn Hardy, filed this medical malpractice claim against nurse Martha Cordero and her employee, Medical Arts Associates, Ltd. On plaintiff's motion, the trial was expedited. This medical malpractice case went to jury trial less than 10 months after it was filed. Following a trial in the circuit court of Rock Island County, the jury returned a verdict in defendants' favor. Plaintiff appeals, claiming the trial court erred in denying her motions for a directed verdict, judgment notwithstanding the verdict, and for a new trial.

BACKGROUND

In December of 2006, plaintiff underwent surgery for cancer. Subsequently, on February 23, 2007, she was given an intravenous (IV) infusion of chemotherapy by defendant Martha Cordero, a

nurse employed by defendant Medical Arts Associates, Ltd. Specifically, nurse Cordero infused a drug known as Adriamycin.

Adriamycin is a vesicant, a substance that causes tissue blistering if it leaks from a blood vessel. Defendants conceded that there was a leakage (extravasation) of the vesicant drug into Marilyn's tissue.

The protocol in place in February of 2007 at Medical Arts Associates for the management of an extravasation of a vesicant stated, "When extravasation of a vesicant is suspected, stop the infusion." On February 27, 2008, plaintiff filed suit alleging negligence against nurse Cordero. Defendant Medical Arts Associates was named on a theory of vicarious liability. Trial began on October 20, 2008. The main issue at trial was whether nurse Cordero breached the standard of care by not properly identifying the extravasation and stopping the infusion.

Nurse Cordero testified that when she began the infusion, there was redness at the IV site "the size of a pinky finger." This initial redness increased to the size of a nickel by the conclusion of the IV. It was pointed out at trial that during her deposition, nurse Cordero stated the redness was the size of her pinky finger with no indication of whether she meant the length or width of her finger. At trial, she clarified that she meant the size of the tip of her pinky finger.

Cordero stated that if the size of the redness was, in fact, the length of her pinky finger, she would have immediately stopped the infusion. However, the redness was the size of the

tip of her pinky finger which, given her training and 14 years of experience, was not unusual under any circumstances. Blood return was good, there was no puffiness at the infusion site, and as such, she had no indication of the presence of an extravasation.

Theresa Rasche, a nurse at Medical Arts Associates, testified as an occurrence witness. She agreed with nurse Cordero that there was no "puffiness" present at the infusion site. She remembered the plaintiff saying that the burning "did not hurt that bad" and she did not see any evidence of extravasation. Nurse Rasche further agreed that blood return is a "big criteria" [sic] regarding evidence of extravasation. It was her observation that the redness observed at plaintiff's IV site was the size of a pencil eraser. She did agree that if the redness increased to the size of a "whole pinky finger," the IV should be discontinued.

Plaintiff's expert, Michelle Klups, testified that she believed nurse Cordero breached the standard of care applicable to a reasonable, careful oncology nurse in the area "because Ms. Hardy complained of burning from the start of the IV, and with that complaint, the IV should have been stopped immediately." Klups explained that the presence of "any redness is a sign that the infusion should be stopped and it should moved to a different site" regardless of whether the "redness was the size of a pinky finger or nickel sized."

Dr. Michael Porubcin, an oncologist at Medical Arts

3

Associates, also testified.  He stated that if there was redness "the length of a pinky finger" with burning, he would expect the IV to be discontinued.  He further stated that burning does not always indicate the existence of an extravasation.  Dr. Porubcin noted that he relies on Cordero's nursing judgment given his confidence in her experience and background, and that he had no reason to question nurse Cordero's judgment concerning the care given plaintiff.

Following the close of evidence, plaintiff moved for a directed verdict.  Plaintiff argued the evidence unequivocally proved that nurse Cordero failed to follow Medical Arts Associates' policies and well-established nursing standards and, therefore, it was uncontroverted that defendants breached the applicable standard of care.  That is to say, redness and pain or burning requires stoppage of the intravenous infusion of Adriamycin every time.  Defendants disputed plaintiff's contentions.  The trial court denied plaintiff's motion for directed verdict.

During closing arguments, plaintiff requested that the jury render verdicts against both nurse Cordero and Medical Arts Associates in an amount between $600,000 and $900,000, broken down as follows:

| | | |
|---|---|---|
| Disfigurement: | $ 40,000 to | $ 60,000 |
| Loss of a Normal Life-<br>  Past: | $ 50,000 to | $100,000 |
| Loss of a Normal Life- | | |

4

|                          |            |     |            |
|--------------------------|------------|-----|------------|
| Future:                  | $100,000   | to  | $150,000   |
| Costs Associated with Help Cleaning: | $ 1,200 | to | $ 1,200 |
| Lost Earnings-Past:      | $ 14,500   | to  | $ 16,000   |
| Pain and Suffering:      | $400,000   | to  | $600,000   |
| Total:                   | $605,700   | to  | $927,200   |

The jury ultimately returned a verdict in defendants' favor. Thereafter, plaintiff filed a motion for a judgment notwithstanding the verdict, claiming "she has proved each and every element of her claim, there are no intervening causes, and it is clear from the evidence that defendant Cordero failed to meet the standard of care." The trial court denied this motion.

Plaintiff also filed a motion requesting a new trial, alleging that the trial court committed evidentiary errors by improperly admitting certain evidence. Specifically, plaintiff argued that the trial court erred by allowing references to plaintiff's failure to mitigate damages, by allowing evidence regarding plaintiff's alleged comments about continuing with the administration of Adriamycin, and by allowing defendant Martha Cordero to testify to opinions that were not previously disclosed. The trial court denied plaintiff's motion. This appeal followed.

ANALYSIS

Plaintiff argues on appeal that the trial court erred when: (1) denying her motion for a directed verdict; (2) denying her motion for a judgment notwithstanding the verdict *(n.o.v.)*; and

(3) denying her motion for a new trial.  The plaintiff's first two claims are intertwined as they both allege that plaintiff offered uncontradicted testimony to prove all the elements of her cause of action.

## I. Motion for Directed Verdict

Plaintiff alleges, with regard to the trial court's denial of her motion for a directed verdict, that the trial court erred in failing to recognize that plaintiff established a *prima facie* case of medical negligence that was never contradicted by the defendants and, in fact, was admitted by two employees of Medical Arts Associates.  Continuing this line of reasoning, plaintiff argues that since she unequivocally proved her *prima facie* case of medical negligence, the jury was not free to disregard her expert's uncontradicted opinion that Martha Cordero breached the standard of care applicable to a reasonable oncology nurse when she failed to stop the IV infusion.  Therefore, plaintiff concludes it was error to deny her motion for a directed verdict.

We review the trial court's denial of a motion for directed verdict, as well as its denial for a motion for judgment *n.o.v.*, *de novo*.  *Buckholtz v. MacNeal Hospital*, 337 Ill. App. 3d 163, 785 N.E.2d 162 (2003); *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 767 N.E.2d 314 (2002).  "[V]erdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever

6

stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967). In making this assessment, a reviewing court must not substitute its judgment for the jury's and may not reweigh the evidence or determine the credibility of witnesses. *Donaldson*, 199 Ill. 2d at 89. A directed verdict should not be granted where "there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome." *Maple v. Gustafson*, 151 Ill. 2d 445, 454, 603 N.E.2d 508, 516 (1992).

A central issue in a medical malpractice action is the standard of care against which the medical professionals' alleged negligence is judged. *Curi v. Murphy*, 366 Ill. App. 3d 1188, 852 N.E.2d 401 (2006). It is the plaintiff's burden to prove by a preponderance of the evidence that the defendant deviated from the standard of care. *Borowksi v. Von Solbrig*, 60 Ill. 2d 418, 423, 328 N.E.2d 301, 304-05 (1975). Of course, this requires proof of the applicable standard of care. A deviation from the standard of care constitutes professional negligence, which must be proved by expert testimony. *Borowski*, 60 Ill. 2d at 423, 328 N.E.2d at 304-05. The question of whether a medical professional deviated from the standard of care is a question of fact for the jury. *Mansmith v. Hameeduddin*, 369 Ill. App. 3d 417, 425, 860 N.E.2d 395, 404 (2006), citing *Borowski v. Von Solbrig*, 60 Ill. 2d 418, 328 N.E.2d 301 (1975), citing *Pedrick v. Peoria & Eastern*

7

*R.R. Co.*, 37 Ill. 2d 494, 510 (1967).

Plaintiff argues that her expert Michelle Klups' testimony unequivocally established that "any redness is a sign that the infusion should be stopped and should be moved to a different site." Plaintiff further alleges that the only evidence regarding the standard of care adduced at trial clearly stated that it was breach of the standard of care to fail to move the IV to a different site once any redness whatsoever was noticed. Therefore, plaintiff contends it was error to deny her motion for a directed verdict as uncontradicted evidence proved defendants violated the standard of care. We disagree.

Nurse Cordero testified (as an expert on her own behalf) that the signs and symptoms of an extravasation are swelling, stinging, burning, pain at the injection site, an IV flow rate that slows or stops, erythema, and inflamation or blanching at the injection site. While she noticed redness around the injection site and the plaintiff complained of burning, she did not believe that the standard of care called for her to stop the IV administration. Specifically, when asked, "Wouldn't you agree with me that under this authority that the standard of care called for you to stop the IV administration?" she answered, "No." Nurse Cordero stated that the standard of care in performing such a procedure "indicates you can continue with an irritant." She then stated that burning and redness are also signs of an irritant and do not always equate to an extravasation. Cordero admitted that if she suspected an

8

extravasation, then the standard of care would call for her to stop the procedure. Nurse Cordero testified that it is acceptable to continue the treatment even though a small amount of redness existed at the IV site and the patient experienced burning, especially in light of the fact that there continued to be "good blood return." In her opinion, the article relied upon by the plaintiff's expert only says to "stop if you think its extravasation," and does not establish a protocol mandating that the procedure be stopped at the first sign of redness or burning. She reiterated that while burning can be a sign of extravasation, it can also be a sign of a simple irritant.

Nurse Cordero stated that she had administered Adriamycin more than 100 times over her 14-year career. The plaintiff's case was the only extravasation or infiltration she had ever experienced. Nurse Cordero was specifically asked what she thought of the plaintiff's expert's opinion that claimed "the very fact of the redness alone should have told you to stop that IV." She disagreed with that assessment, noting it is very common to get redness just from the insertion of the needle. "When that redness did not get any bigger in size and I was continuing to get good blood return, it was not swelling or puffing up, I did not think it was extravasation."

Nurse Cordero specifically disagreed with plaintiff's expert, Klups, who stated that good blood return is not a reliable indicator of the absence of extravasation. Cordero claimed that good blood return is "one of the main reliable

9

indicators."

While plaintiff claims she unequivocally established that the standard of care called for the discontinuation of the procedure once any redness was noted at the IV site, nurse Cordero's testimony specifically refuted that allegation. This created questions of fact for the jury to resolve as to what the exact standard of care was in this matter and whether nurse Cordero violated the standard of care. The trial court did not err in denying plaintiff's motion for a directed verdict.

## II. Judgment *n.o.v.*

Plaintiff argues it was error to deny her motion for a judgment *n.o.v.*, claiming that the jury was not free to disregard plaintiff's expert's opinion that nurse Cordero breached the standard of care. It is clear, however, that the jury simply resolved questions of fact against the plaintiff and in defendants' favor. "Indeed, the jury, as the trier of fact, is entitled to believe one expert over the other where the experts offer divergent conclusions." *Hall v. National Freight, Inc.*, 264 Ill. App. 3d 412, 423, 636 N.E.2d 791, 799 (1994). Again, a judgment *n.o.v.* should only be granted in cases in which all of the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand. *Wodziak v. Kash*, 278 Ill. App. 3d 901, 663 N.E.2d 138 (1996). "'This is clearly a very difficult standard to meet, limiting the power of the circuit court to reverse a jury verdict to extreme situations only.'" *Jones v.*

10

*Chicago Osteopathic Hospital*, 316 Ill. App. 3d 1121, 1125, 738 N.E.2d 542, 547 (2000), quoting *People ex rel. Department of Transportation v. Smith*, 258 Ill. App. 3d 710, 714, 631 N.E.2d 266 (1994).

In light of nurse Cordero's expert testimony that the standard of care did not call for removal of the IV where only redness and burning were present given the good blood return, we cannot say that the evidence so overwhelmingly favors plaintiff that no contrary verdict could ever stand.  To do so would involve substituting our opinion concerning the weight of the evidence for that of the jury.  We hold the trial court did not err in denying plaintiff's motion for judgment *n.o.v.*

### III. Evidentiary Claims

Finally, plaintiff argues that the trial court allowed a number of evidentiary errors to occur and, therefore, erred when denying her motion for a new trial.  Specifically, plaintiff alleges it was error: (1) to deny plaintiff's attempts to cross-examine nurse Rasche as a controlled expert witness; (2) to allow testimony regarding the plaintiff's comments during the medical procedure; and (3) to allow Dr. Porubcin to testify that he told plaintiff about the possibility of going to physical therapy. The circuit court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard.  *Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 887 N.E.2d 656 (2008).  An abuse of discretion occurs when no reasonable person would rule as the circuit court ruled.  *Aguirre*, 382 Ill. App. 3d at 98, 887 N.E.2d

11

at 663.

## A. Cross-examination of Rasche

Plaintiff attempted "to cross-examine Ms. Rasche as to her knowledge regarding the standard of care, and what she would have done as a reasonably careful oncology nurse confronted with the facts of this case." Defense counsel objected to this line of questioning, arguing that nurse Rasche was merely an occurrence witness and not an expert witness. The trial court sustained many of defendants' objections. This, plaintiff claims, deprived her "of a fair trial in that plaintiff had learned of facts during Rasche's discovery deposition which would support the claim that Rasche agreed that the standard of care for a reasonable oncology nurse confronted with these facts, namely, redness and burning sensation at the commencement of the Adriamycin, called for the stopping of the IV."

Plaintiff requested and was allowed to make an offer of proof during cross-examination of nurse Rasche concerning "policy and practice at Medical Arts." During that offer of proof, nurse Rasche stated, "I don't know what I would have done" if confronted with the same set of facts. Moreover, when asked if it was Medical Arts Associates' policy to stop an IV in such circumstances, she replied, "I'm not aware of that policy." At that point, plaintiff's counsel ended the offer of proof.

Courts have split as to whether it is proper or improper for medical experts to testify as to what they personally would have done if presented with the facts facing defendants, as opposed to

12

merely testifying as to whether defendants' actions violate the applicable standard of care. See *Schmitz v. Binette*, 368 Ill. App. 3d 447, 857 N.E.2d 846 (2006); *Gallina v. Watson*, 354 Ill. App. 3d 515, 821 N.E.2d 326 (2004); *Walski v. Tiesenga*, 72 Ill. 2d 249, 381 N.E.2d 279 (1978); *Stevenson v. Nauton*, 71 Ill. App. 3d 831, 390 N.E.2d 53 (1979); *Mazzone v. Holmes*, 197 Ill. App. 3d 886, 557 N.E.2d 186 (1990). Nurse Rasche's discovery deposition is not in evidence. It was not part of plaintiff's offer of proof. At trial, she unequivocally stated she did not know what she would have done if confronted with the same situation as was nurse Cordero. In light of her answer, we fail to see how the trial court abused its discretion when excluding that testimony or how keeping that testimony from the jury prejudiced the plaintiff.

Moreover, in plaintiff's offer of proof, nurse Rasche was never asked if defendants' actions violated the applicable standard of care. She was only asked if she would have done something differently or if defendant's actions violated a specific Medical Arts Associates' policy. Again, she responded that she was not aware of any policy that nurse Cordero's decision violated. Keeping such testimony from the jury in no way prejudiced the plaintiff, denied her a fair trial, or prevented her from presenting her theory of her case.

### B. Plaintiff's Testimony

Plaintiff further argues that it was error to allow testimony that plaintiff wanted to continue the IV even though she was

13

experiencing burning during the treatment.  Specifically, plaintiff points to three passages in the record in which nurse Rasche, once, and defendant Cordero, twice, testified that plaintiff wanted to continue with the IV despite the burning.  Plaintiff argues such testimony violated an order *in limine* that prohibited "testimony that Ms. Hardy was comparatively negligent."  However, during trial, plaintiff failed to object to the testimony of which she now complains and never moved to strike it.  Nevertheless, plaintiff argues such testimony was "essentially in violation of the *in limine* order" and, therefore, she is entitled to a new trial.

"Once a motion *in limine* is granted, the movant must be vigilant and object when evidence is presented which may violate the order.  The purpose of an *in limine* order is to exclude inadmissible evidence, not to create a trap which results in a new trial if the court in retrospect determines the rule was violated." *Cunningham v. Millers General Insurance Co.*, 227 Ill. App. 3d 201, 206, 591 N.E.2d 80, 83 (1992), citing *Reidelberger v. Highland Body Shop, Inc*., 83 Ill. 2d 545, 416 N.E.2d 268 (1981).  "A motion to strike is required to preserve errors in the admission of evidence. *** [A] party opposing evidence waives any objection unless a motion to strike is made as soon [as] the objectionable nature of evidence becomes apparent." *Netto v. Goldenberg*, 266 Ill. App. 3d 174, 178, 640 N.E.2d 948, 952 (1994).  Plaintiff failed to object to, and never moved to strike, either nurse Rasche's or nurse Cordero's references to

14

plaintiff's wishes to continue the IV.  Plaintiff has forfeited the issue.

## C. Physical Therapy

Moreover, plaintiff neither objected to nor moved to strike Dr. Porubcin's testimony that he discussed ordering physical therapy for plaintiff but she declined such treatment.  As such, we find plaintiff has forfeited that issue as well.  See *Netto v. Goldenberg*, 266 Ill. App. 3d  at 178, 640 N.E.2d at 952.  Given these findings, we hold that the trial court did not err when denying plaintiff's posttrial motion requesting a new trial.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

CARTER and McDADE, JJ., concur.

15