AMOS A. VOYLES *et al.*, Co-Adm'rs of the Estate of Iva Mae Sutton, De-
ceased, Plaintiffs-Appellants, v. GERALD E. SANFORD *et al.*, Defendants-
Appellees.

Third District   No. 3—88—0636

Opinion filed May 24, 1989.—Rehearing denied June 27, 1989.

Komessar & Wintroub, of Chicago (Mark S. Komessar, of counsel), for
appellants.

Schaffenegger, Watson & Peterson, Ltd., of Chicago (Jack L. Watson, of counsel), for appellees.

JUSTICE BARRY delivered the opinion of the court:

Plaintiffs brought this wrongful death suit on behalf of the estate of Iva Mae Sutton, who died as a result of injuries suffered on the evening of July 4, 1986, when the automobile in which she was a passenger collided with a tractor-trailer rig operated by defendant Gerald Sanford for his employer, defendant Interstate Brands Corporation. The matter was tried to a jury, which returned a verdict in favor of the defendants. In this appeal, plaintiffs challenge several evidentiary rulings of the trial court and the court's refusal to give one of plaintiffs' tendered jury instructions. We find that the court erred and that this cause must be remanded for a new trial.

The facts underlying the lawsuit as perceived by the drivers of three vehicles on the night in question follow. Around 10 p.m. of July 4, 1986, Sondra Sutton, then 16 years old, was driving westbound on Corning Road en route from a party in Beecher, Illinois, to the home of her grandmother, Iva Mae Sutton. The night was clear and dry. Sondra was well acquainted with the road, although she had been a licensed driver for only a few months at that time. Sondra knew that she had to stop at the intersection of Corning Road and Route 1 and turn south to get to her grandmother's home. A stop sign at the intersection of Corning Road and Route 1 was missing that night. Sondra failed to slow down as she approached the intersection and crashed into the side of a tractor-trailer rig. Iva Mae Sutton sustained extensive injuries and died on August 2, 1986.

On the date and time in question, Gerald Sanford was heading south on Route 1 en route from Chicago to Columbus, Indiana. He and his codriver, David Duncan, were returning home from delivering bakery goods in the Chicago area. As the truck left Beecher, an automobile ahead of Sanford appeared to brake and then speed up in an erratic manner. Sanford adjusted his speed to maintain a good 200-foot distance between that driver and himself. Route 1 has two small hills, or dips, the second of which crests about a quarter of a mile north of the intersection with Corning Road. About 150 feet from the intersection, Sanford observed the Sutton vehicle heading for the intersection and realized that the car was traveling too fast to make a stop. According to Sanford, he first attempted to stop by activating the trailer brakes. This slowed him from around 45 to 38 miles per hour. Next, Sanford tried to shift down two gears by accelerating the engine to match his road speed to RPMs. He yelled to Duncan that they were going to get

hit. The gear shift knob broke off in Sanford's hand. Then the Sutton vehicle slammed into the left drive wheel of the tractor, shoving the truck sideways, slid under the trailer and flipped it over.

Steven Balasz, a 27-year-old semi driver, was returning to his home in Momence, Illinois, with his wife after having watched the July 4 fireworks display in Beecher. Balasz proceeded south on Route 1 in his 1978 Chevy Blazer with the roof off and the windows down. About 200 feet ahead was the semi operated by Sanford. Balasz was driving about 50 to 55 miles per hour and was gaining on the semi. When Balasz reached the top of a hill about a half mile north of Corning Road, he observed to his left the Sutton vehicle heading west toward the intersection. He saw the Sutton vehicle, a large Pontiac, slow for a bridge and then bounce up. He heard the roar of the motor as it accelerated and sped toward the intersection at an estimated speed of 70 or 80 miles per hour. Balasz braked and skidded to a stop at the side of the road just north of the intersection. Balasz and his wife watched the collision between the Pontiac and the semi. They immediately drove a short distance east on Corning Road to the radio station to report the accident and then returned to check on the occupants of the two vehicles and to provide information to police officers who appeared on the scene.

Liability issues presented by the foregoing facts concerned primarily whether Sanford kept an adequate lookout in approaching the intersection and whether the evasive measures he took were reasonable to avoid a collision.

On August 15, 1988, immediately prior to the trial of this cause, defendants moved to bar the testimony of plaintiffs' expert witness, Robert Farrell, pursuant to Supreme Court Rule 220(b)(1) (107 Ill. 2d R. 220(b)(1)). Farrell's identity had been disclosed to defendants on July 27 or 28, 1988, less than 20 days before the trial was to begin. Because of the untimeliness of the disclosure, the court allowed defendants' motion *in limine* barring Farrell's testimony. In this appeal, plaintiffs initially contend that the court's ruling was error. We need not discuss this issue, however, because our review of the record discloses other error requiring remand for a new trial, and we do not anticipate that the expert witness disqualification issue will reoccur on retrial.

Next, plaintiffs contend that the trial court erred in striking portions of the testimony of David Duncan. At the time of trial, Duncan lived out of the State and was no longer employed by defendant Interstate Brands. Plaintiffs sought to introduce Duncan's testimony as given at his evidence deposition. Duncan was an experienced semitruck

driver. In his initial discovery deposition, Duncan stated that it would have been improper to attempt to stop the tractor-trailer rig by activating only the trailer brakes. Duncan went on to explain that the trailer braking system was to be used only under adverse conditions, such as wet or frozen pavement to prevent jackknifing. Otherwise, the foot pedal brakes, which control both the tractor and the trailer braking systems, are to be used to stop the rig. Subsequently, Duncan testified in his evidence deposition that in addition to adverse weather conditions, the trailer brakes alone should be applied in situations of "quick stops."

On the eve of trial, defendants sought to strike substantial portions of Duncan's testimony on grounds that plaintiffs sought to introduce Duncan as an expert witness and he had not been disclosed as such pursuant to Supreme Court Rule 220(b)(1). At the hearing on the motion, defense counsel argued that plaintiffs were attempting to get Duncan's testimony as an expert before the jury in the guise of impeachment. The court adopted defense counsel's reasoning and struck all testimony relating to Duncan's opinion as to the proper operation of the semi's braking systems.

■ We find this evidentiary ruling erroneous. As plaintiffs are quick to point out, the court's ruling cut the heart out of their case. The question of whether Duncan had to be disclosed as an expert witness prior to trial pursuant to Rule 220 was recently decided in *Smith v. Central Illinois Public Service Co.* (1988), 176 Ill. App. 3d 482, 531 N.E.2d 51, *appeal denied* (1989), 124 Ill. 2d 562, 535 N.E.2d 921. The *Smith* court, in determining whether an expert who is an employee of a party must be disclosed under Rule 220, relied on our supreme court's opinion in *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 529 N.E.2d 525, which declared that a treating physician is not an expert witness for purposes of Rule 220. Consistent with *Tzystuck*, the *Smith* court reasoned that the fact that an employee of a party—who is also an occurrence witness and intimately involved in the subject of the litigation—testifies poses no surprise to the movant. The only surprise is that he gives an expert opinion. (176 Ill. App. 3d at 494-95, 531 N.E.2d at 59.) Since the witness' identity is discoverable early in the litigation process under general rules of discovery (Supreme Court Rule 201 (107 Ill. 2d R. 201)), an employee "who is intimately involved in the subject matter of the litigation need not be disclosed as an expert witness pursuant to Rule 220(b)(1)." 176 Ill. App. 3d at 495.

■ Although Duncan in this case was not employed by defendant Interstate Brands at the time of trial, the *Smith* court's rationale applies with equal force here. Duncan was an employee of defendant In-

terstate Brands at the time of the accident; he was "intimately involved" in the matter being litigated; he was not retained as an expert for the purpose of litigation; he was known as an experienced driver long before trial; and he was equally available to all parties for purposes of discovering his testimony. The record discloses that Duncan's experience as a semi driver was sufficiently established as a foundation for rendering an opinion concerning the proper use of the tractor-trailer rig's braking system. Accordingly, plaintiffs were not required to provide defendants with further disclosure pursuant to Rule 220, or to claim that Duncan's evidence deposition testimony impeached his discovery deposition testimony, in order to introduce his opinion at trial.

Whether the admission of such evidence would affect the outcome of this case is a matter about which we need not speculate. We hold only that plaintiffs were improperly denied the opportunity to introduce Duncan's opinion testimony and that, as a consequence, this cause must be remanded for a new trial.

We have reviewed plaintiffs' remaining issues and find them without merit. We address them briefly, however, because they may arise again upon retrial.

■■ ■ Under the circumstances of this accident the trial court properly refused plaintiffs' tendered Illinois Pattern Jury Instructions, Civil, No. 70.02 (2d ed. 1971) (IPI Civil 2d) for open, unmarked intersections. Defendants' vehicle was on a preferential highway and was on the right as the two vehicles approached the intersection. Plaintiffs' proffered instruction on the general statute governing right-of-way in Illinois could only have served to confuse the jury. Finally, we believe that the court did not err in admitting daytime photographs of the scene of the accident, given that a proper foundation was laid for their introduction. Counsel's interrogation of the various witnesses who identified the pictures stressed to the jury that they were daytime photographs of the scene of a nighttime accident. Any prejudice resulting from lighting differences between the scene at the time of the accident and the photographs was amply overcome by the probative value of the pictures for purposes of demonstrating the topography of the area near the intersection in question.

For the reason stated, the judgment of the circuit court is reversed and this cause is remanded for a new trial.

Reversed; cause remanded.

SCOTT and STOUDER, JJ., concur.