ALLSTATE CONTRACTORS, INC., Plaintiff-Appellee, v. MARRIOTT CORPORATION *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 1—93—3497

Opinion filed June 20, 1995.

Arnold & Kadjan, of Chicago (John F. Etzkorn and Steven F. McDowell, of counsel), for appellants.

Mark E. Wohlberg, of Chicago, for appellee.

JUSTICE McCORMICK delivered the opinion of the court:

Plaintiff Allstate Contractors, Inc., brought an action for breach of a construction subcontract between itself and defendant Bulley & Andrews, Inc., and foreclosure of a mechanic's lien against property owned by defendant Marriott Corporation.[1] Defendant Bulley & Andrews, Inc., counterclaimed for damages allegedly incurred in completing performance of plaintiff's contract. After trial, the jury returned a verdict in favor of plaintiff on the complaint and counterclaim, and awarded $328,000 in damages. Upon defendants'

---

[1]The other named defendants are not involved in this appeal.

post-trial motion, the trial court ordered a remittitur of the damages to $114,540.81. The trial court also entered judgment on count II of the complaint, against defendant Marriott Corporation, for a lien on the property in the amount of $114,540.81. On appeal, defendants contend as follows: (1) the trial court erred in allowing plaintiff's rebuttal witness, William Golding, to testify as an expert because plaintiff had not disclosed him as an expert pursuant to Supreme Court Rule 220 (134 Ill. 2d R. 220); (2) the trial court erred in denying defendants' motions for judgment notwithstanding the verdict and for a new trial; (3) the trial court abused its discretion in refusing to tender to the jury defendant Bulley & Andrews' proposed instructions Nos. 14, 16 and 18; (4) the trial court should have entered a remittitur lower than $114,540.81 based on defendant Bulley & Andrews' incurred costs to complete performance under plaintiff's contract; and (5) the trial court erred in entering judgment of the foreclosure of the mechanic's lien against defendant Marriott.[2] For the reasons set forth below, we affirm the judgment of the circuit court.

Defendant Bulley & Andrews was hired as the general contractor for the construction of the Marriott Courtyard Hotel in Arlington Heights. Bulley & Andrews hired plaintiff as subcontractor to furnish cement for the foundations, floors, walks and curbs. The total amount of the contract between plaintiff and defendant Bulley & Andrews was $243,000. The contract provided that if plaintiff, as subcontractor, failed to remedy any defects in performance after five days' written notice, Bulley & Andrews could terminate the contract. The contract also stated that after termination, the subcontractor would not be entitled to further payment until completion of the work. In the event the cost of completion of the subcontractor's unfinished work exceeded the general contractor's expense, the subcontractor would be responsible for paying the difference.

Problems arose between plaintiff and Bulley & Andrews. On July 17, 1985, the following mailgram was sent to plaintiff from Bulley & Andrews:

> "IT HAS BEEN DECIDED BY BULLEY & ANDREWS THAT DUE TO THE QUALITY OF THE CONCRETE SLAB POURS IN THE 'B' WING, THE REMEDIAL WORK NECESSARY TO TAKE

---

[2]To comply with the appellate court page limitations specified by revised Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994), issues (3) and (5) have been deleted for purposes of publication. The entire decision is contained in the opinion filed with the clerk of this court.

CARE OF THE PROBLEMS MUST BE RESOLVED BY NOON, FRIDAY, JULY 19, 1985. IN ADDITION, IT MUST BE TURNED INTO ACTION BY 8:00 A.M. MONDAY, JULY 22, 1985. IF THE PREVIOUS IS NOT FOLLOWED, BULLEY & ANDREWS WILL TAKE THE NECESSARY ACTION TO MAKE SURE THAT THESE PROBLEMS ARE RESOLVED IMMEDIATELY. ON THE SLABS IN QUESTION ('B' WING), THE CONCRETE TOLER-ANCE WILL BE NO MORE THAN +3/8″, REPEAT +3/8″. FUTURE SLABS IN TOLERANCE WITH SPEC. SECTION #3300, PAGE 20. BULLEY & ANDREWS WILLIAM J. METZ SENIOR PROJECT MANAGER."

Bulley & Andrews later terminated plaintiff on August 2, 1985, sending the following mailgram:

"AS OF THIS DATE BULLEY & ANDREWS IS TERMINATING YOUR CONTRACTUAL RESPONSIBILITIES FOR THE CON-CRETE WORK AT THE ABOVE STATED JOB, DUE TO LACK OF COOPERATION, PLANNING & COORDINATION & PER-FORMING TIMELY PLACEMENT & QUALITY OF YOUR CONCRETE WORK.

THREE PRESENT ISSUES BROUGHT THIS TO A HEAD: 1. LACK OF EXPOSE AGGREGATE FIELD MOCK-UP 2. NOT STARTING THE SLAB WORK IN THE LOWER LOUNGE AREA OF THE D WING ON SCHEDULE. 3. THE QUALITY OF LAY-OUT OF CONCRETE IN RESPECT TO ROOM EDGES.

BULLEY & ANDREWS WILLIAMS [sic] J METZ SR PROJECT MANAGER."

Plaintiff brought an action for breach of a subcontract and foreclosure of a mechanic's lien in June 1986. On defendants' motion, the trial court dismissed plaintiff's three-count complaint for failure to comply with section 2—606 of the Illinois Code of Civil Procedure (735 ILCS 5/2—606 (West 1992)), which requires that the document on which a claim is based be attached to the complaint. Plaintiff filed an amended complaint in February 1987.

Count I of the amended complaint alleged that pursuant to the contract, there remained due and owing plaintiff the amount of $114,540.81, representing $86,900 on the original contract of $243,000 between plaintiff and Bulley & Andrews and $27,640.81 for "extras" (additional work agreements to the contract). Count II of the amended complaint alleged that Bulley & Andrews owed plaintiff $114,540.81 on the contract. Count III alleged that Bulley & Andrews had made certain representations that induced plaintiff to enter into a contract with Material Service Corporation, plaintiff's ready-mix concrete supplier, and that Bulley & Andrews disregarded those representations and paid "a sum of money *** directly to Material Service Corpora-

tion." Count III prayed for $114,540.81 in compensatory damages and $100,000 in punitive damages. Upon defendants' motion, count III was later dismissed.

Bulley & Andrews answered the complaint and filed affirmative defenses stating that plaintiff's performance was incomplete and defective, that a setoff was due for the costs Bulley & Andrews incurred to complete plaintiff's performance, and that plaintiff had failed to pay its subcontractors or provide sufficient workmen on the work site. In addition, defendants filed a counterclaim in which defendant Bulley & Andrews alleged that plaintiff breached their agreement and that plaintiff owed Bulley & Andrews $39,764.44 for damages incurred for completion of plaintiff's work.

The case went to jury trial on count I of the amended complaint, which addressed only the alleged breach of the contract between plaintiff and Bulley & Andrews. The trial court reserved judgment on count II and the jury did not consider that issue. After a two-week trial, the jury returned a verdict in favor of plaintiff on the complaint and counterclaim and awarded plaintiff $328,000 in damages. Through a special interrogatory, the jury found that Bulley & Andrews breached its contract with plaintiff by the following acts: (1) no proper notice under the terms of the contract; (2) prevention of plaintiff's performance; and (3) nonpayment under the contract. Upon defendants' motion, the trial court granted a remittitur and the damages awarded were reduced to $114,540.81. The court held a separate hearing on count II, the claim for a mechanic's lien, after which the court entered an amount on the lien of $114,540.81. There were no issues of notice or recording of the lien.

Defendants first argue that the trial court erred in allowing plaintiff's rebuttal witness, William Golding, to testify as an expert to whether the notice of termination plaintiff received was "an accepted method in the industry" because plaintiff had not disclosed him as an expert pursuant to Supreme Court Rule 220. (134 Ill. 2d R. 220.) Plaintiff, however, argues that Golding was an occurrence witness and an employee of Bulley & Andrews at the time of the incident. According to plaintiff, defendants were fully aware of Golding's existence and his knowledge of the agreement. In addition, plaintiff points out that Golding was disclosed as one of defendants' Rule 220 experts prior to trial who, defendants represented, could give an opinion as to "construction management, defects and failures in performance of Allstate, quality of work of Allstate, payments and damages, contract issues and defenses."

Supreme Court Rule 220 defines an expert as:

"[A] person who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the

average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion within his expertise at trial. He may be an employee of a party, a party, or an independent contractor." (134 Ill. 2d R. 220(a).)

An expert witness need not be disclosed prior to trial if he is (a) intimately involved in the underlying facts and (b) he would reasonably be expected to give an opinion through that involvement. *Yamnitz v. William J. Diestelhorst Co.* (1993), 251 Ill. App. 3d 244, 248-49, 621 N.E.2d 1046, citing *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1992), 154 Ill. 2d 543, 549, 610 N.E.2d 77; see also 134 Ill. 2d R. 220(b)(1).

William Golding was the executive vice-president of Bulley & Andrews at the time of the incident. He negotiated the contract between Bulley & Andrews and Marriott, and was familiar with the contract between Bulley & Andrews and plaintiff. Golding visited the project several times and was aware that plaintiff had trouble with the cement pouring in the "B" wing area of the project. Defendants maintain, however, that Golding's involvement in the subject matter of this litigation was "slight" and that there was no showing that Golding had any significant role in the negotiation or day-to-day administration of the relevant subcontract. Defendants' own statements about Golding's knowledge and involvement in this matter contradict their contention. According to defendants' Rule 220 disclosure statement, Golding, among others, was capable of rendering an opinion about plaintiff's performance, or lack thereof, under the contract, the damages incurred under the contract, the quality of plaintiff's work and the overall progress of the project.

Moreover, the law is well settled that "an employee 'who is intimately involved in the subject matter of the litigation need not be disclosed as an expert witness pursuant to Rule 220(b)(1).' " (*Voyles v. Sanford* (1989), 183 Ill. App. 3d 833, 836, 539 N.E.2d 801, quoting *Smith v. Central Illinois Public Service Co.* (1988), 176 Ill. App. 3d 482, 495, 151 N.E.2d 31.) In *Voyles*, a wrongful death action arising out of an automobile accident, the plaintiff sought to introduce the evidence deposition of an out-of-State witness who had been a former employee of the defendant. In the deposition, the former employee, an experienced truck driver, testified that "it would have been improper to attempt to stop the tractor-trailer rig [involved in the incident] by activating only the trailer brakes." (*Voyles,* 183 Ill. App. 3d at 836.) The former employee further testified as to the proper circumstances and road conditions necessary to use the braking system

at issue. (*Voyles*, 183 Ill. App. 3d at 836.) The trial court struck this testimony, on the basis that plaintiff had failed to disclose the witness as a Rule 220(b)(1) expert.

The appellate court reversed, finding that although the employee was not employed with defendant at the time of trial, he "was an employee of defendant *** at the time of the accident; he was 'intimately involved' in the matter being litigated; he was not retained as an expert for the purpose of litigation; he was known as an experienced driver long before trial; and he was equally available to all parties for the purposes of discovering his testimony." *Voyles*, 183 Ill. App. 3d at 836-37.

■ In this case, Golding was employed by Bulley & Andrews at the time of the incident and had considerable experience in the construction industry. He was not retained by plaintiff for the purpose of this case. Rather, his purpose was to render an opinion based on his knowledge of the facts of this case. Golding was equally available to both parties. The purpose of Rule 220 is to eliminate "surprise" testimony to the prejudice of the opposing party. (*Wakeford*, 154 Ill. 2d at 547; see also 134 Ill. 2d R. 220, Committee Comments.) Defendants cannot claim to be surprised by Golding's testimony in light of Golding's personal involvement and knowledge of the subject matter in this case, in addition to his experience in the industry which, presumably, was well known to both parties. It was not incumbent upon plaintiff to disclose Golding as an expert under the facts and circumstances of this case.

Defendants next argue that the trial court erred in not granting their motion for judgment notwithstanding the verdict and their alternate motion for a new trial. Plaintiff argues that defendants lack standing to raise this issue because one of defendants' alternate prayers for relief, remittitur, was granted by the trial court. *Carter v. Kirk* (1993), 256 Ill. App. 3d 938, 944, 628 N.E.2d 318.

We first consider plaintiff's argument that defendants lack standing to assert this issue. In *Carter*, the defendants argued that the trial court erred in denying their motion for a new trial on damages only. However, the trial court did grant the defendants' alternative request for a remittitur. The defendants did not propose to the trial court an amount the verdict should be reduced to and did not argue on appeal that the amount of the remittitur was insufficient. The appellate court held that an appeal from the denial of a motion for a new trial on damages is precluded where the trial court awarded the remittitur following the defendants' alternative request for such relief. (*Carter*, 256 Ill. App. 3d at 944.) The court reasoned that the defendants' rights were not prejudiced since they were awarded the

remittitur they sought rather than a new trial on the issue of damages. According to the court, " '[t]he right to appeal exists only in favor of a party whose rights have been prejudiced by the judgment or decree appealed from.' " (*Carter*, 256 Ill. App. 3d at 944, quoting *Clay v. Pepper Construction Co.* (1990), 205 Ill. App. 3d 1018, 1022, 563 N.E.2d 937.) Because of this rationale, defendants in the instant case contend that *Carter* is limited to its facts. Defendants argue that *Carter* is inapplicable here because the remittitur does not address the relief they seek: a new trial based on alleged evidentiary matters or a judgment notwithstanding the verdict.

We agree with defendants that *Carter* is inapplicable to this case, but not for the reasons stated by defendants. Defendants' argument suggests that the *Carter* court's holding was an isolated determination. According to defendants, "*Carter* may only be applied in a case where the relief sought on appeal is no greater than the trial court awarded." We do not believe defendants' statement to be a correct summation of the court's holding. The *Carter* court held that because the trial court granted the remittitur pursuant to the defendants' own request, they could not contend, on appeal, that the trial court erred in granting that request.

■ We also disagree with plaintiff that the *Carter* holding stands for the proposition that any time a remittitur is requested and granted, the party granted such relief necessarily lacks standing to assert error on appeal. In *Carter*, the defendants asked for a remittitur in an unspecified amount and were granted the requested relief and the defendants, on appeal, did not contend that the amount of remittitur was inadequate. In this case, however, defendants, in their post-trial motion, requested a remittitur in a specified amount—$16,000. The trial court instead entered a remittitur in the amount of $114,540.81. The remittitur the trial court granted was not that which defendants requested. *Carter* does not hold that the trial court's grant of a remittitur, of any amount, is sufficient to satisfy the relief requested. Moreover, unlike the defendants in *Carter*, defendants in this case have argued that the amount of remittitur entered by the trial court was insufficient. Thus, we find defendants have standing to raise the aforementioned error on appeal.

Turning to the issue before us, we note that in reviewing a trial court's decision to deny a judgment notwithstanding the verdict, we must view the evidence in a light most favorable to the party opposing the motion. (*Thacker v. UNR Industries, Inc.* (1992), 151 Ill. 2d 343, 353-54, 603 N.E.2d 449.) The law is well settled that a jury's verdict should not be set aside merely because different inferences and conclusions may be drawn from conflicting testimony. (*Boll v.*

*Chicago Park District* (1992), 249 Ill. App. 3d 952, 958, 620 N.E.2d 1082.) In this case, the jury determined that Bulley & Andrews improperly terminated plaintiff's contract. Although there was conflicting evidence presented from both parties, there was ample evidence to support the jury's determination. We briefly review some of the evidence presented to the jury that supports its determination. Article XIV of the contract between plaintiff and defendant Bulley & Andrews required the subcontractor to "promptly replace all faulty, defective or improper work or materials of which it is notified." While plaintiff admitted deficiencies in performing under the contract, it undertook steps to correct that performance. Plaintiff's witnesses, Robert Atkins and Chris Crnkovich, testified that they were in the process of completing work on the "B" wing pursuant to the notice they received on July 17, 1985. The testimony also showed that the reasons stated in the August 2, 1985, discharge notice of plaintiff's dismissal were unrelated to the problems with the concrete pouring in the "B" wing and that plaintiff had not received prior notice of these alleged deficiencies.

In addition, there was evidence to support plaintiff's allegation that Bulley & Andrews effectively prevented plaintiff from completing its obligations under the contract. For example, the August 2, 1985, termination notice stated that one of the reasons for plaintiff's dismissal was for the "lack of expose aggregate field mock-up." However, the evidence demonstrated that the reason the exposed mock-up (*i.e.*, sample) was not done was because defendant never informed plaintiff of the type of mock-up it wanted. According to the evidence, without this direction plaintiff could not complete the mockup. There was also evidence that plaintiff's failure to begin work on another section of the project was due to the fact that other contractors, whose work must necessarily precede plaintiff's, were behind schedule. In addition, necessary "rough grading" in several areas had not been performed. The rough grading was Bulley & Andrews' responsibility.

As mentioned above, the evidence conflicted with regard to certain facts. However, the fact that an opposite conclusion might have been reached or that different inferences might have been raised is not sufficient to set aside a jury's verdict, and we decline to do so in this case. We cannot find that the jury's determination, after viewing the evidence presented in a light most favorable to plaintiff, requires this court to set aside the jury's verdict.

We now address defendants' contention that the trial court erred in denying their motion for a new trial. The standard of review in determining whether a new trial should be granted is whether the

verdict was contrary to the manifest weight of the evidence and appears to be "palpably erroneous." *Boll*, 249 Ill. App. 3d at 958.

Our review of the record does not reveal the jury's verdict to be either against the manifest weight of the evidence or "palpably erroneous." The jury heard extensive testimony about plaintiff's performance, deficiencies in that performance, Bulley & Andrews' acts which frustrated that performance and the circumstances surrounding plaintiff's dismissal. Since there was conflicting evidence in this case, we will not disturb the jury's verdict absent a showing that an opposite conclusion is clearly evident. (*Boll*, 249 Ill. App. 3d at 958.) The jury returned a verdict in favor of plaintiff on the complaint and the counterclaim. Through a special interrogatory, the jury found that Bulley & Andrews breached its contract with plaintiff by (1) lack of proper notice, (2) prevention of plaintiff's performance, and (3) nonpayment of plaintiff. There was evidence to support this determination and we find nothing in the record to show that an opposite conclusion was clearly evident here. We find no error in the trial court's denial of defendants' motion for a new trial.

Defendant Bulley & Andrews further contends that the trial court should have entered a remittitur for an amount lower than $114,540.81 due to the fact that Bulley & Andrews paid one of plaintiff's suppliers, Material Service Corporation, $30,000. According to defendant, since part of the contract price included monies plaintiff would have had to pay to its supplier, that amount should be deducted from the amount due on the contract. Defendant contends that failure to reduce the damages awarded to at least $84,366.79 would be tantamount to failing to correct an injustice by failing to put the nonbreaching party in the position it would have been in absent the breach.

■ We disagree. Defendant assumed the obligation to pay plaintiff's supplier to complete the project after it wrongfully dismissed plaintiff. Therefore, defendant's payment to plaintiff's supplier was part of its costs of completion after it wrongfully breached plaintiff's contract. Defendant fails to direct this court's attention to any case in which the court has allowed the remedy it claims. To pass the cost of completion of the project on to plaintiff would not only work an injustice as to plaintiff, but would also virtually vitiate the judgment.

In *Expert Painting, Inc. v. Perrin Corp.* (1981), 93 Ill. App. 3d 683, 689, 417 N.E.2d 683, the defendant general contractor sought a credit for costs it incurred after unjustifiably terminating the plaintiff's contract. The appellate court held that "Perrin cannot expect to be able to recover, against Expert, the costs Perrin had to expend to

complete Expert's obligations under the contract which obligations Perrin unjustifiably prevented Expert from fulfilling itself." For the same reason, defendant Bulley & Andrews' further argument here, that it should be credited for payments it made to Ridgeview Construction and United Crown to complete the concrete work on the Marriott project, after it wrongfully terminated plaintiff's contract, must also fail. Defendant argues that under article V of the contract, no positive balance was available to plaintiff after defendant paid Ridgeview Construction $86,510 and United Crown $49,574 to finish plaintiff's work. Defendant's argument presupposes that it was justified in dismissing plaintiff under article V in the first place. Since that is not the case, we find defendant is not entitled to a remittitur in an amount lower than that entered by the trial court.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.